C. P. M. ALLEN, Receiver, Plaintiff, v. MASSACHUSETTS BONDING & INSURANCE COMPANY, Defendant, Appellee; DAVID M. WITTER et al., Plaintiffs, Appellants.

No. 42331.

March 13, 1934.

Rehearing Denied June 23, 1934.

F. G. Ryan and Royal & Royal, for appellants.

Cosson & Newcomb, for appellee C. P. M. Allen.

Comfort & Comfort, for appellee Massachusetts Bonding & Ins. Co.

Anderson, J.—The plaintiff Allen was receiver of the Victor J. Silliman Company, Inc., which was engaged, prior to the appointmen of the receiver, in selling securities or as brokers. The Silliman Company had purchased what is known as a brokers blanket bond from the Massachusetts Bonding & Insurance Company, defendant-appellee, the material part of which, so far as this case is concerned, is as follows:

"Section 1. The Massachusetts Bonding & Insurance Company, a corporation of the Commonwealth of Massachusetts, with its home office in the City of Boston, hereinafter called the Underwriter, in consideration of an annual premium agrees to indemnify Victor J. Silliman Company, Inc., hereinafter called the Insured, against the direct loss, sustained while this bond is in force and discovered as hereinafter provided, of any money or securities, or both, as defined in Section 5 hereof, in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee, or agent, and whether or not the Insured is liable therefor (such money and securities being hereinafter called Property), in an amount not exceeding Twenty-Five Thousand Dollars as follows."

After the appointment of Allen as receiver, he brought an action upon the bond seeking to recover the sum of $1,220.88 by reason of a loss sustained by the Silliman Company by reason of the dis-

honest acts of certain of its employees. While said action was pending, David M. Witter and several other persons and parties claiming to be similarly interested obtained leave of court to intervene in said action. The intervenors claiming in their petition that each of them had deposited certain sums of money and certain securities with the Silliman Company as collateral security for the payment of the unpaid purchase price of certain shares of corporate stock purchased by each of said intervenors from the Silliman Company, and that, upon the appointment of the receiver for said company, the said funds and securities so deposited by the intervenors were not found in the possession of the Silliman Company, and were lost by reason of the dishonest acts of Victor J. Silliman, while acting as president of the Silliman Company; that such funds and securities so deposited with the Silliman Company were lost to the said intervenors; that the said intervenors have not been paid therefor; and that the broker's blanket bond in suit covers such loss; and the intervenors pray for judgment in favor of the receiver, Allen, for the use and benefit of the intervenors, against the defendant bonding company in the several amounts of the sums of money and the value of the securities so deposited by each of said intervenors. To the petition of intervention the defendant answered denying any liability by reason of the matters and things alleged in the petition of intervention, and alleging that there is no privity of contract existing as between the intervenors and the defendant company; that the contract or bond referred to in the petition of intervention does not in any way provide for the intervenors as beneficiaries under said bond; that there was no intent on the part of the defendant or the Silliman Company at the time the bond was executed to make any one the beneficiary thereunder other than the Silliman Company. The defendant Massachusetts Bonding & Insurance Company also filed an answer to the petition of Allen, receiver. The cause proceeded to trial on the part of the plaintiff, and shortly thereafter a settlement was effected between the plaintiff Allen and the defendant bonding company, and the plaintiff dismissed his cause of action with prejudice. The court then permitted the defendant company to withdraw its answer to the petition of intervention, and the defendant filed a demurrer to such petition; the demurrer stating that the petition of intervention did not state a cause of action against the defendant, that the intervenors were not parties to the bond, were not named as beneficiaries therein, and that the action could not be maintained

against the defendant for the reason that there was no privity of contract as between the intervenors and the defendant company. The demurrer was sustained by the court and the intervenors elected to stand on their petition. Judgment was entered dismissing the intervenors' petition. The intervenors appeal.

The intervenors contend that the court erred in sustaining the demurrer; that privity of contract was established by law; that recovery on a bond may be had by an unnamed beneficiary; and that under proper construction of the bond involved the intervenors were entitled to recovery thereon.

The defendant-appellee claims that the intervenors did not bring themselves within the statutory requirements permitting intervention under section 11174 of the 1931 Code; that there is no privity of contract between the intervenors and the bonding company, and there could be no recovery on the bond by the intervenors until there was a showing made that the Silliman Company had a loss which was covered by the terms of the bond, and until such loss had been paid by the Silliman Company; that the bond in question is purely a contract of indemnity.

We will not discuss or determine the question as to the right of the intervenors to intervene in the action brought by the receiver. The case will be determined on the question as to the liability under the bond. The appellants concede that if the bond in suit is a contract limited to the indemnification of the Silliman Company, for pecuniary loss sustained by it through the dishonest acts of its officers or employees, an affirmance of the ruling of the trial court must necessarily follow, but that the bond should not be so construed; that the intent of the parties gathered from the language of the bond and its provisions make it something more than purely a contract of indemnity; and that the intervenors are within the protection of the bond.

We cannot agree with the intervenors' construction of the provisions of the bond. The bond recites that, in consideration of the annual premium, the bonding company agrees to indemnify the Silliman Company against the direct loss of any money or securities in which the insured has a pecuniary interest, or held by the insured as collateral, or as bailee, trustee, or agent, and whether or not the insured is liable therefor, in an amount not exceeding $25,000. This is purely a contract to indemnify the Silliman Company. No reference is made in its terms to any one else. It might be true that,

if the Silliman Company had paid its obligations to the various intervenors for their losses, the receiver representing the Silliman Company could have recovered from the bonding company therefor, but such is not the situation. In the event the Silliman Company, or its receiver, had paid its loss to its customers, the intervenors, then the bonding company could have no defense as against an action on the bond even though the Silliman Company had paid something that it was not liable for, and this we think is what is meant by the clause inserted in the bond "whether or not the Insured is liable therefor." The contract is one of indemnity against loss and not against liability. The protection of the bond was for the protection of the Silliman Company alone. The intervenors were not parties to the contract, were not named or referred to therein, and had no legal rights thereunder.

"There is a well-recognized difference between contracts of indemnity against loss and contracts of indemnity against liability. In the former the insurance company does not become liable until loss has actually been suffered and the amount of the insurance does not become available until the insured has paid the loss, whereas in the latter case the obligation of the insurance company becomes fixed when the liability attaches to the insured." Klotzbach v. Auto Fire Ins. Assn. (Mo. App.) 267 S. W. 39, 40, cited with approval in Zieman v. U. S. F. & G. Co., 214 Iowa 468, 238 N. W. 100.

"We are unable to conceive more explicit terms in which condition E could have been phrased to express the idea that no liability shall exist under the policy by the company to the assured until the assured has sustained a loss covered by the policy and has been paid by him in money, or for money expended by him under the policy. The terms of this condition clearly make the contract one of indemnity and must be so regarded within the decisions of this and other courts." Glatz v. General Accident, Fire & Life Assur. Corp., 175 Wis. 42, 183 N. W. 683, 685.

"The law recognizes a well-defined difference between covenants of indemnity against loss, and covenants to assume or pay a liability. In the former class the covenant is not broken, and no right of action accrues, until a loss has been suffered against which the covenant runs, while in the latter class the covenant is broken, and a right of action accrues, whenever the liability is fixed and absolute. This distinction grows out of the express terms of the contract,

and must be recognized, otherwise a new contract would be made for the parties, and their rights determined thereunder, instead of by the contract which they made." Cousins v. Paxton & Gallagher Co., 122 Iowa 465, 98 N. W. 277, cited with approval in Duke v. Tyler, 209 Iowa 1345, 230 N. W. 319. See, also New England Equitable Ins. Co. v. Boldrick, 192 Iowa 763, 185 N. W. 468.

In the Cousins v. Paxton & Gallagher case, supra, we used the following language:

"If the obligee of the bond has paid nothing, he has suffered no damage as a matter of fact; a mere liability to pay may ripen into an actual loss, but if it is never paid no damage results to the obligee by reason thereof, and in such circumstances the liability to pay constitutes no damages for which the indemnity was given."

"One not a party to a contract of indemnity and for whose benefit it was not made, cannot maintain an action thereon against the indemnitor. Accordingly, it has been held that an agreement by a building contractor to indemnify the owner of the building against any loss resulting from injury to others in the progress of the work will not sustain an action against the contractor by person injured." 14 R. C. L. 61.

In the case at bar the intervenors are contending for a recovery on the theory that the contract is one to insure the liability of the Silliman Company, or that it was executed with the intent and purpose to cover the loss now claimed to have been sustained by the intervenors. We can see no merit in this contention.

Sections 8581-c11 and 8581-c14 provide for the filing of a bond by dealers and salesmen of securities conditioned that such dealers or salesmen "shall properly account for any moneys or securities received from or belonging to another and shall pay, satisfy and discharge any judgment or.decree that may be rendered against such dealer in a court of competent jurisdiction in a suit or action brought by a purchaser of securities against such dealer," and that such bond shall run in favor of the state for the use and benefit of any purchaser of securities sustaining damages by or through his dealings with such dealers or salesmen. The statute referred to also provides that any person injured by a breach of the bond may sue thereon for the recovery of his damages. The bond provided for by these sections is clearly for the use and benefit of persons

in the situation of the intervenors in this case. It is a statutory bond. The bond in this suit and upon which the intervenors are attempting to recover is a private bond running between the bonding company and the Silliman Company, indemnifying one obligee only. Such a bond is not broken until the indemnitee has suffered an actual loss or damage. The provisions for filing the dealers' and salesmen's bond to which we have referred dispels any thought and answers any argument that the private bond involved in this suit was executed with the intent and purpose of securing or indemnifying the customers or clients of the Silliman Company. The dealers' bond provides for the liability which the intervenors are attempting to assert in this case. The bond upon which the intervenors are attempting to fix liability is entirely separate and distinct in its terms and in its purpose and intent from the so-called dealers' bond.

It seems to be the consensus of the decisions and texts on this subject that no precise rule for the construction of contracts of this kind exists, but each case must rest upon the construction of the particular contract under consideration, and the contract must be given that construction which will most nearly carry out the intention of the parties. Moriarity v. Tomlinson, 58 S. D. 431, 235 N. W. 363.

It is also the general rule that the liability of surety is to be determined by the specified conditions of the bond, and such liability cannot be enlarged beyond such specified conditions. Kuhl v. Chamberlain, 140 Iowa 552, 118 N. W. 776, 21 L. R. A. (N. S.) 766; Hay v. Hassett, 174 Iowa 601, 156 N. W. 734.

The rule therefore is that sureties are never held responsible beyond the clear and absolute terms and meaning of their undertakings. Presumptions, implications, or equities are never allowed to enlarge or change their legal obligations.

We reach the conclusion therefore that the purpose and intent in the execution of the bond here involved was to indemnify the insured, Silliman Company, against direct loss through the dishonesty of its employees, and that it was not executed for the benefit of any other or for any other purpose. This being so, the intervenors cannot recover on the bond here involved. It follows that the court did not err in sustaining the demurrer to the intervenors' petition, and an affirmance necessarily follows.—Affirmed.

CLAUSSEN, C. J., and STEVENS, KINDIG, KINTZINGER, and MITCHELL, JJ., concur.